UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PHILIP BERRYMAN and<br>ALBERT L. LEE,<br><br>      Plaintiffs,<br><br>v.<br><br>R. HAAS,<br>GEORGE STEPHENSON,<br>REGINA JENKINS-GRANT, and<br>ARUS SCAMBATTI,<br><br>      Defendants. | Case No. 2:18-cv-10833<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING MOTION FOR RECUSAL [39] AND
GRANTING IN PART MOTIONS FOR AND RELATING TO PRELIMINARY
INJUNCTIVE RELIEF [10, 17, 18, 22, 26]**

Philip Berryman is permanently confined to a wheelchair. Further, his medical conditions require him to "self-evacuate": he must use his hands to remove his feces. Performing manual evacuation in front of other prisoners can be humiliating. Moreover, Berryman alleges the procedure has upset his cellmates to the point where they have assaulted him. For example, Berryman says, "[In January 2018] I tried to evacuate [my] feces while the other prisoner was in the room. [My] bunky then woke up yelling what the f[**]k is that smell old man I told you what would happen if you did that shit in here and he jumped down and started hitting [me] while [I] was laying in the bed with feces still coming out of [me]." (ECF No. 1, PageID.10.) Due to his need for a wheelchair and his medical conditions, Berryman has had a single-person cell for the vast majority of his over 20 years in the Michigan Department of Corrections.

Things changed in 2017. And in March of that year, Berryman filed a lawsuit (not this case) asserting that it was unlawful for staff at the Macomb Correctional Facility (MRF) to deprive

him of a single-person cell. That case was filed with another prisoner, Harry Ritchie, and it was assigned to this Court (the undersigned). Berryman and Ritchie sought a preliminary injunction ordering MRF personnel to provide each of them with a single-person cell. This Court denied the motion. It found that Berryman had not exhausted the Department's administrative process for obtaining relief. *Berryman v. Haas*, No. 17-CV-10762, 2017 WL 3263980, at *3 (E.D. Mich. July 31, 2017). And, while acknowledging that prison officials who force a prisoner to self-evacuate or soil himself in front of another prisoner might offend the Eighth Amendment's promise of basic human dignity, *see Berryman v. Haas*, No. 17-CV-10762, 2017 WL 3224970, at *6 (E.D. Mich. July 31, 2017), this Court found that the evidence did not establish that the defendants were forcing Ritchie to soil himself with any frequency, *id.* at *7. So the Court denied Ritchie preliminary relief. Later, the defendants were granted summary judgment on Ritchie's claims. *Berryman v. Haas*, No. 17-10762, 2018 WL 1762660, at *1 (E.D. Mich. Apr. 12, 2018). This Court entered judgment in April 2018. Berryman then appealed the case to the Sixth Circuit, where it remains pending. *See Philip Berryman, et al v. Randall Haas, et al*, No. 18-1526 (6th Cir. filed May 10, 2018).

In February 2018, Berryman, this time with Albert Lee as his co-plaintiff, filed another lawsuit (this case). Lee, like Berryman, is an older prisoner who is wheelchair bound for life. And, like Berryman, Lee says, "I have to [c]atheter myself several times a day" and "[I] must self evacuate [my] own feces two to three times a day." (ECF No. 1, PageID.27; ECF No. 20, PageID.131.) Lee says he also has "been beaten up[,] verbally abused[,] and threatened with Sexual Assault, all due to another prisoner placed in his cell/room[.]" (ECF No. 20, PageID.132.) Similar to the March 2017 lawsuit, Berryman and Lee ask this Court to order MRF staff to assign each of them to a cell without a cellmate. And beginning in April 2018, Berryman and Lee filed several motions asking for an injunction (temporary, preliminary, and permanent), for an evidentiary

hearing in support of injunctive relief, or for an expedited ruling. (ECF Nos. 10, 17, 18, 22, 26.) This Court first learned of Berryman and Lee's suit in September 2018 and it was reassigned to the undersigned shortly thereafter. *See* E.D. Mich. LR 83.11(b) (setting out criteria for companion cases).

**I.**

Before turning to the motions relating to injunctive relief, the Court addresses a preliminary issue. Berryman (and possibly Lee) ask this Court to recuse itself from this case. (ECF No. 39.) The bases of this request are that this Court did not adhere to the principle of *stare decisis* in the prior case and that the prior case is on appeal. (ECF No. 39, PageID.332–333.)

The motion for recusal will be denied. "[D]isagreement with a judge's decision or ruling is not a basis for disqualification or upsetting judicial rulings." *Downer v. Rite Aid Corp.*, 2011 U.S. Dist. LEXIS 96497, at *14–15 (E.D. Mich. Aug. 29, 2011) (citing *Liteky v. United States*, 510 U.S. 540, 555–56 (1994)). And even if this Court committed legal error in the prior case, and even if this Court's decision will be reversed, this Court harbors no animus toward or bias against Berryman or Lee. The Court will, as always, do its best to apply the law to the facts.

It turns to that task now.

**II.**

Berryman and Lee have the burden of showing that they are entitled to a preliminary injunction. They must show that they are "likely to succeed on the merits," that they are "likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Cooper v. Honeywell Int'l, Inc.*, 884 F.3d 612, 615–16 (6th Cir. 2018).

3

## A.

The Court begins with Berryman. Since filing this suit against staff at MRF and seeking to enjoin them from denying him a single-person cell, Berryman has been transferred from MRF. He is now at the Earnest C. Brooks Correctional Facility (LRF). As a general matter, "a transfer to another prison moots a prisoner's claim for injunctive relief addressing prison conditions if the alleged risk of harm does not travel with the prisoner to his new institution." *Whitworth v. CoreCivic, Inc.*, No. 17-cv-1121, 2018 U.S. Dist. LEXIS 138072, at *13-14 (Aug. 15, 2018), *report and recommendation adopted by* 2018 U.S. Dist. LEXIS 154668 (M.D. Tenn. Sept. 11, 2018). And, here, Berryman has not pled (let alone evidenced) that LRF staff have denied him a single-person cell. And supposing they have, LRF staff may have found a way to resolve Berryman's problems with cellmates. Perhaps they found a cellmate who is tolerant of Berryman's need to self-evacuate and have scheduled time for Berryman to be alone in his cell (or found another location for self-evacuating or provided Berryman with a privacy screen). All of this is not known. So the Court cannot say that absent an injunction, irreparable harm is "likely." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (finding that the Ninth Circuit's "possibility" standard was "too lenient" and explaining, "Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.").

True, Berryman does allege that his transfer from MRF was in retaliation for this lawsuit. And he alleges that back in 2014, Governor Rick Snyder and the Department's director, Heidi Washington, ordered that he be transferred to MRF as part of "Jewish Religious Programming." (ECF No. 33, PageID.285.) Berryman states that, under that program, "Jewish Foods would be shipped directly to MRF and the Rabbis would be able to conduct their programming with all the

other Jewish prisoners which had been vetted for (300) years as to their heritage." (ECF No. 33, PageID.285.) Berryman says that his religious practice "entails [practicing] with other Born Jewish prisoners that make up a minion (10) or more natural Jewish persons, not prisoners just wishing to eat on the Jewish diet line." (ECF No. 33, PageID.285.) He notes that only 35 prisoners were transferred to MRF in 2014, thereby implying that there are not many "natural" or "Born" Jewish persons in the Department's custody. (ECF No. 33, PageID.285.)

At this time, the Court cannot conclude that there is any significant infringement on Berryman's religious liberty. Berryman has not explained why food that is indirectly shipped to his current correctional facility, LRF, does not allow him to practice his faith. And Berryman has not alleged that LRF has too few "natural" or "Born" Jewish persons to allow for a minyan or otherwise allow him to practice his faith.

Accordingly, the Court is not convinced that Berryman is "likely" suffering irreparable harm. The Court will thus not grant Berryman preliminary relief at this time. *See Winter*, 555 U.S. at 22; *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) ("Although the four factors must be balanced, the demonstration of some irreparable injury is a sine qua non for issuance of an injunction.").

**B.**

The Court reaches a different outcome as to Lee. As noted, Lee has asserted—either via affidavit or verified complaint—that he must "catheter several times daily" and must self-evacuate "two to three times a day." (ECF No. 1, PageID.11, 27–28; ECF No. 20, PageID.131.) (The Court acknowledges that the self-evacuation assertion is questionable as, in the complaint, Lee does not say he self-evacuates but instead says he is not able to control his bowels.) Lee has also averred that his cellmates have verbally and physically assaulted him: "[my cellmate] complained of the

5

smell of the urine and the [f]eces and the fact that I had to change my Depends several times a day. I was humiliated, assaulted and told if I had said anything that other members of his gang would see that I would be F[***]ED UP." (ECF No. 1, PageID.28; *see also* ECF No. 20, PageID132 ("beaten up verbally abused and threatened with Sexual Assault").) The indignity of self-evacuating in front of other prisoners and the risk of assault by other prisoners are, at least when combined, a substantial risk of serious harm under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[P]rison officials . . . must take reasonable measures to guarantee the safety of the inmates." (internal quotation marks omitted)); *Hudson v. McMillian*, 503 U.S. 1, 8, 11 (1992) ("[T]he Eighth Amendment's prohibition of cruel and unusual punishments draw its meaning from the evolving standards of decency that mark the progress of a maturing society . . . . [C]oncepts of dignity, civilized standards, humanity, and decency . . . animate the Eighth Amendment. (internal quotation marks omitted)). And, if Lee's averments about self-catheterizing and self-evacuating many times a day are true, it would be reasonable to infer that Defendants know what Lee is doing. Indeed, Lee avers that a resident unit manager, Grant (or Jenkins-Grant), told him that MRF staff were "well . . . aware [of] yours and prisoner Berryman's conditions." (ECF No. 1, PageID.11; *see also* ECF No. 20, PageID.131.) Putting the last two points together, serious harm that Defendants are aware of (and are not preventing), leads to a conclusion of deliberate indifference. Moreover, dignitary injuries and distress from assault are often irreparable because they are not readily translatable to dollars. *See Caspar v. Snyder*, 77 F. Supp. 3d 616, 640 (E.D. Mich. 2015) ("Plaintiffs alleg[ations] include intangible matters, such as loss of dignity and other emotional injury, which are not susceptible to quantitative calculation."); *Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1084 (N.D. Cal. 1997) ("Injuries to individual dignity and deprivations of civil rights constitute irreparable injury.").

In response to Lee's averments, Defendants offer no counter evidence. They have not, for example, produced medical records showing that Lee does not need to self-evacuate. And they have not, for example, shown that Lee has not been assaulted by his cellmates. Instead, Defendants merely say that "Berryman and Lee have failed to present any evidence that they have been the subject of assaults or threats or any retaliatory actions by Defendants." (ECF No. 31, PageID.203.) But sworn statements in an affidavit and a verified complaint are evidence.

The reason Defendants have not really addressed the merits of Lee's claims is that, in their view, they do not have to. In particular, Defendants argue that Lee did not exhaust administrative remedies for his complaints before bringing them to federal court. (*See* ECF No. 30; ECF No. 31, PageID.203.) To back this assertion, Defendants have provided the Court with a printout from a database that logs all step III appeals received by the Department. That printout shows that at times relevant to this case, Lee only pursued one grievance through step III (the "March 2018 Grievance"). (ECF. No. 30, PageID.194.) But the step III appeal for the March 2018 Grievance was not received by the Department until May 10, 2018. The problem for Lee, Defendants say, is that this suit had been pending for over two months by then. (*Compare* ECF No. 1, PageID.25, *with* ECF. No. 30, PageID.194.) So Defendants argue that the March 2018 Grievance did not exhaust claims in the complaint. *See* 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . *until* such administrative remedies as are available are exhausted." (emphasis added)); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (providing that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit"); *cf. Mattox v. Edelman*, 851 F.3d 583, 592 (6th Cir. 2017) (holding that a plaintiff can "amend his complaint to add claims that were

exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim").

In response, Plaintiffs do not claim that the March 2018 Grievance exhausted the claims Lee brought to court. Instead, they point to paragraph (F) of the Department's policy directive on grievances and recite instructions from the grievance coordinator at MRF. Policy Directive 03.02.130(F) says, "Two or more prisoners and/or parolees may not jointly file a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest." It also says that if a "prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum[.]" According to Plaintiffs, they have "[m]irror" claims and the grievance coordinator at MRF, E. Taylor, told them that they could not file a grievance and to take their issue to the Warden's Forum. (*See* ECF No. 34, PageID.298–299.)

And Plaintiffs say they did just that. Plaintiffs have provided the Court with a manually-reproduced copy of the Warden's Forum agenda from, apparently, February 2018. According to that reproduction, Plaintiffs (or someone) asked why MRF staff were "not complying with MDOC policy Medical Service Advisory Committee Guideline 0003?" (ECF No. 34, PageID.305.) The agenda then included the following quote from that guideline: "Patients who are wheelchair-bound will be automatically placed in a barrier-free wheelchair accessible cell. The special accommodation will replace the need for health care to order single person cell." (ECF No. 34, PageID.305; ECF No. 1, PageID.29.)

It appears that Deputy Warden George Stephenson (perhaps on behalf of the acting warden) responded to this inquiry. The following is Plaintiffs' manual reproduction of the response: "Prisoner(s) who need a single person cell are designated by CFA [Correctional Facilities

8

Administration] and MRF adheres to the accommodation, therefore if a Prisoner is designated by CFA to have a single person cell he will be accommodated. If a prisoner no longer has a single person cell medical accommodation then he is no longer assigned a single person cell." (ECF No. 34, PageID.306.)

So, based on Plaintiffs' averments, they were instructed by the grievance coordinator at MRF to bring their complaint about not receiving a single-person cell to the Warden's Forum. They did that (at least in part). And they got a response indicating that they would only receive a single-person cell if they had the proper designation from CFA or with a "medical accommodation." Apparently, Lee has neither of those for, according to him, he does not now have a single-cell assignment.

There may be good reasons why this did not amount to exhaustion—at least not of all of Plaintiffs' claims. But Defendants have not provided them. So, at this stage of the case, Defendants have not carried their burden of showing that Lee has not exhausted. *See Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) (clarifying that defendants bear the "burden of production and persuasion on the issue of exhaustion"). And so while Lee's likelihood of success is discounted by the possibility that he did not exhaust, Defendants have not yet shown that the discount is substantial.

On the current record then, Lee has some likelihood of winning and is likely suffering irreparable harm. There seems to be little burden on Defendants in providing one prisoner a single-person cell for a short time—indeed, it appears that both Lee and Berryman had one until January 2018. So the Court finds that Lee is entitled to a preliminary injunction. Defendants are, of course, free to move to dissolve the injunction at any time.

**III.**

Before concluding, the Court makes a final note. Given that Berryman has been transferred to another correctional facility, it is not obvious that Berryman and Lee should remain co-plaintiffs in this case. *Berryman v. Neff*, No. 2:13-12403, 2013 WL 3547102, at *5 (E.D. Mich. July 11, 2013). Neither is it clear whether Berryman's claim that his transfer from MRF was retaliatory or his claim that LRF does not permit him to practice his religion should be severed from this case. *See Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018). The Court simply flags these issues, taking no position on them one way or the other. With the urgent motions resolved, the Court will refer this case to the magistrate judge for her to answer these questions and resolve the other outstanding motions.

\* \* \*

For the reasons given, Plaintiffs' motion for recusal (ECF No. 39) is DENIED. Plaintiffs' motions relating to preliminary relief (ECF Nos. 10, 17, 18, 22, 26) are GRANTED insofar as Lee is entitled to a single-person cell until this Court orders otherwise; those motions are otherwise DENIED. Defendants' counsel is to immediately provide MRF staff and Lee with a copy of this opinion and order.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: December 21, 2018

CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, December 21, 2018, using the Electronic Court Filing system and/or first-class U.S. mail.

                                         s/William Barkholz
                                         Case Manager