UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP BERRYMAN,
and ALBERT L. LEE

    *Plaintiffs,*

v.

R. HAAS,
GEORGE STEPHENSON,
REGINA JENKINS-GRANT,
and ARUS SCAMBATTI,

    *Defendants*.
_____/

CASE NO. 2:18-cv-10833

DISTRICT JUDGE LAURIE MICHELSON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (R. 30) and PLAINTIFFS' VARIOUS MOTIONS (R. 40, 43, 47, 48)**

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (R. 30) be **GRANTED**, and that Plaintiffs' Complaint (R. 1) be **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that the remaining motions be **DENIED AS MOOT:**

- Plaintiff's motion to file a supplemental complaint (R. 40),
- Plaintiff's motion for extension of time (R. 43), and
- Plaintiff's two emergency motions for reconsideration and for a bench trial (R. 47, 48.)

## II. REPORT

### A. Introduction

Plaintiff Philip Berryman is a state prisoner residing at Earnest Brooks Correctional Facility and Plaintiff Albert L. Lee is a state prisoner residing at Macomb Correctional Facility. Both were incarcerated at Macomb Correctional Facility at the time of the events giving rise to the allegations in the Complaint. They filed this *pro se* prisoner civil rights Complaint against Defendants Haas, Stephenson, Jenkins-Grant, and Scambatti on March 9, 2018. (R. 1). Both Plaintiffs are permanently wheelchair bound. Plaintiff Berryman's condition requires him to self-evacuate his feces.

The Complaint avers the following events occurred on January 18, 2018: Plaintiff Berryman's request for a single person room was denied, and Defendant Scambatti acknowledged he had always been given a single-person room but told Berryman he must have done something to Defendant Grant and Stephenson because "they really had it out for you, I don't have a choice but to agree." (R. 1 at PageID.5); Plaintiffs Berryman and Lee were eventually told by Defendant Scambatti that they needed to go to their assigned cells and would not receive single cells; (2) on that same date, Berryman's cellmate threatened him because of the smell in the room (later Plaintiff indicates that this harassment continued) and when Berryman told Defendant Scambatti, Scambatti told Berryman he would not be moved because of Defendants Grant and Stephenson; and (3) on that same date, when Berryman complained to Defendant Stephenson, Defendant Stephenson told him he had a "paper on my desk that says I don't have to give you a Single Person Room anymore" but would not show Berryman the paper and refused to

acknowledge that Berryman and Stephenson had "entered into a contract []when [Stephenson] signed that 2015 grievance for the Single Man Cell and its binding on you still" (R. 1 at PageID.9).

The Complaint further avers that on January 24, 2018, when Berryman complained about not having a single cell, Defendant Grant told Berryman he never should have filed a lawsuit on the Warden and other Defendants and she stated, "You Jews are all alike," and that when Plaintiff Lee said, "I'm not a Jew then why are you all denying me a Single Person Room?" Defendant Grant responded, "[T]he Jews killed Christ why are you hanging out with him in the first place." (R. 1 at PageID.10-11).

On January 24 or 25, 2018, Plaintiff Berryman asked Defendant Warden Haas why he was refusing Berryman a single person cell, and Defendant Haas responded, "[Y]ou don't have a case anymore." (R. 1 at PageID.12.) When Plaintiff Lee asked Defendant Haas if he could ask a question, Defendant Haas stated, "Let me take a guess, you are the other prisoner requesting a Single Person Room [a]long with Mr. Berryman and you must be prisoner Lee," and then Haas told Plaintiffs that he had read the policy and that neither Plaintiff qualified for it, and that he had Berryman reevaluated and he could have Lee reevaluated as well. (*Id.*)

Plaintiffs claim that these actions violate a myriad of their constitutional rights, including their rights to due process (substantive and procedural) and their rights against retaliation under the First Amendment. Plaintiffs seek compensatory and punitive damages.

## B. Summary Judgment Standard

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp.

2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### C. Governing Law

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in response to a "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] claims [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits "brought with respect to prison conditions" to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies mandate requires both (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford*, there were conflicting interpretations of the PLRA's exhaustion

requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"—enabling a prisoner to bypass prison remedies by simply disregarding or ignoring deadlines. *Id.* at 95. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time, the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies--specifically, the level of detail required in a grievance to put the prison and individual officials on notice of the claim." 549 U.S. at 205; *id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining whether a

plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity, the Court did not find that the PLRA required it. *Id.* at 218. However, the current MDOC policy requires this level of specificity. MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007).

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is an affirmative defense. *Id.*

### D. MDOC Policy

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC PD 03.02.130 (eff. 7/9/2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control." MDOC PD 03.02.130(P).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(V). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). The policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . ." *Id.* The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B), (FF), (GG). *Woodford* and *Jones* require inmates to file grievances that conform to MDOC procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218.

### E. Analysis

Defendants posit Plaintiffs' failure to exhaust administrative remedies as their sole defense to Plaintiffs' claims. (R.30.) Defendants contend that neither Plaintiff Berryman nor Lee has pursued any grievances against any defendants through Step III. (R.30 at PageID.169.) Defendants attach affidavits regarding each Plaintiff's grievance histories that confirm that neither Plaintiff has exhausted any grievance against any defendant

through Step III; thus, neither Plaintiff has fully exhausted any claim. (R.30 at PageID.183-197.) Accordingly, Defendants' motion should be granted.

Plaintiffs argue that "the Grievance Coordinator E. Taylor told Plaintiffs' that they should take their issues to the Warden's Forum in compliance with PD-03.02.130(F)(1) . . . [thus,] Plaintiff Berryman and Lee exhausted their administrative remedies, by taking their issues to the Warden's Forum." (R. 36 at PageID.324.)

The Warden's Forum is the proper place to challenges to the content of a prison policy or procedure. However, in the instant case, Plaintiffs do not challenge the content of policy or procedure, but rather argue that their constitutional rights have been violated and seek compensatory and punitive damages for those violations. They do not argue that any policy is unconstitutional, nor do they ask the court to rewrite or to declare unconstitutional any prison policy. Accordingly, their complaints are grievable and should have been pursued through Step III of the grievance process. *Palmer v. Elrod*, 2017 WL 9472756, at *2 (E.D. Mich. Aug. 9, 2017) (debunking plaintiff's claim that he "exhausted his remedies by taking his issues to the Warden's Forum" because his claims were non-grievable where his complaint "does not challenge the content of policy or procedure" and sought "monetary damages and injunctive relief" for which "it is beyond dispute that prisoner claims brought under that section [1983] must be properly exhausted."). Accordingly, Plaintiffs have not alleged any cognizable reason exempting this case from the exhaustion requirement and Defendants' motion for summary judgment should be granted.

As I have recommended that Defendants' motion for summary judgment be granted, the remaining motions are rendered moot and should be denied for this reason.

### F. Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 30) be **GRANTED**, and that Plaintiffs' Complaint (Doc. 1) be **DISMISSED WITHOUT PREJUDICE**. It is further recommended that the remaining motions be denied as moot, i.e. Plaintiff's motion to file a supplemental complaint (R. 40,) Plaintiff's motion for extension of time (R.43,) and Plaintiff's two emergency motions for reconsideration and for a bench trial. (R.47, 48.)

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 25, 2019                    S/ PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge

**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Philip Berryman #107202 at Earnest C. Brooks Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444 and Albert L. Lee #160282 at Macomb Correctional Facility, 34625 26 Mile Road, New Haven, MI 48048

Date: February 25, 2019                     By s/Kristen Castaneda
                                            Case Manager