UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PHILIP BERRYMAN and<br>ALBERT L. LEE,<br><br>      Plaintiffs,<br><br>v.<br><br>R. HAAS,<br>GEORGE STEPHENSON,<br>REGINA JENKINS-GRANT, and<br>ARUS SCAMBATTI,<br><br>      Defendants. | Case No. 2:18-cv-10833<br>Honorable Laurie J. Michelson<br>Magistrate Judge Patricia T. Morris |

# OPINION AND ORDER
## ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION [50], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [30], AND DENYING ALL OTHER MOTIONS AS MOOT

Philip Berryman and Albert Lee are prisoners in the custody of the Michigan Department of Corrections. Berryman is 77 years old; Lee is 68 years old. Both are permanently confined to a wheelchair. And both say they must use catheters and must manually extract their feces. Further, both claim that cellmates have attacked them because of their compromised condition or because they self-evacuate in their shared cells. For these and related reasons, Berryman and Lee maintain that they are entitled to a single-person cell. For some or even all of 2017, they each had a single-person cell. But things changed in January 2018 when staff at the Macomb Correctional Facility (MRF) assigned each of them to cells with a cellmate. That prompted this lawsuit.

Defendants, each employed at MRF when this suit was filed, seek early summary judgment. They say neither Berryman nor Lee exhausted a grievance about their single-person cells being taken away in January 2018. This motion, along with all other pretrial matters, have

been referred to Magistrate Judge Patricia T. Morris. She recommends granting Defendants' non-exhaustion motion and dismissing Berryman and Lee's complaint without prejudice. As explained below, the Court will accept this recommendation.

I.

A.

In a prior opinion and order, this Court addressed Berryman and Lee's request to preliminary enjoin Defendants from depriving Plaintiffs of a single-person cell. *Berryman v. Haas*, No. 2:18-CV-10833, 2018 WL 6715826 (E.D. Mich. Dec. 21, 2018). As to Berryman, the Court noted that at the time he had filed the lawsuit, he was incarcerated at the Macomb Correctional Facility (MRF) but had since been transferred from MRF to the Earnest C. Brooks Correctional Facility (LRF). *Id.* at *2. (Incidentally, last month Berryman was transferred back to MRF. (*See* ECF No. 51, PageID.480; ECF No. 52.)) "And," the Court explained, "Berryman has not pled (let alone evidenced) that LRF staff have denied him a single-person cell." *Berryman*, 2018 WL 6715826, at *2. So the Court found that Berryman had not shown he needed a court order for a single-person cell. *Id.*

But Lee had not been transferred from MRF and the Court believed that Lee's unrebutted averments of cell-mate assaults and the need to self-evacuate established a likely Eighth Amendment violation. In particular, this Court stated, "The indignity of self-evacuating in front of other prisoners and the risk of assault by other prisoners are, at least when combined, a substantial risk of serious harm under the Eighth Amendment." *Berryman*, 2018 WL 6715826, at *3. The Court acknowledged that Defendants sought summary judgment on the basis that neither Berryman or Lee had exhausted grievances for a single-person cell before filing this lawsuit. *Id.* at *4. In support of their defense of non-exhaustion, Defendants attached a printout from the

grievance database showing that Berryman and Lee had not pursued through the final step of the grievance process any grievance related to the January 2018 decision to place them in cells with cellmates. But, the Court noted, "[a]ccording to Plaintiffs, they have '[m]irror' claims and the grievance coordinator at MRF, E. Taylor, told them that they could not file a grievance and to take their issue to the Warden's Forum." *Berryman*, 2018 WL 6715826, at *4. And, said the Court, "[t]hey did that (at least in part)." *Id.* at *5. The Court recognized that "[t]here may be good reasons why this did not amount to exhaustion—at least not of all of Plaintiffs' claims." *Id.* "But," this Court reasoned, "Defendants have not provided them. So, at this stage of the case, Defendants have not carried their burden of showing that Lee has not exhausted." *Id.* Thus, while "Lee's likelihood of success [was] discounted by the possibility that he did not exhaust, Defendants ha[d] not yet shown that the discount is substantial." *Id.*

So, in short, the Court denied Berryman a preliminary injunction but granted one to Lee.

**B.**

The Court then referred all pre-trial matters to Magistrate Judge Patricia T. Morris. (ECF No. 46.) That included Defendants' motion for summary judgment on the basis of non-exhaustion.

The Magistrate Judge recommends granting that motion. As to Plaintiffs' assertion that they tried to file grievances but the grievance coordinator told them to take their issue to the Warden's Forum, the Magistrate Judge found that the Warden's Forum was not the proper place for their grievance. She explains,

> The Warden's Forum is the proper place to challenges to the content of a prison policy or procedure. However, in the instant case, Plaintiffs do not challenge the content of policy or procedure, but rather argue that their constitutional rights have been violated and seek compensatory and punitive damages for those violations. They do not argue that any policy is unconstitutional, nor do they ask the court to rewrite or to declare unconstitutional any prison policy. Accordingly, their complaints are grievable and should have been pursued through Step III of the grievance process.

3

(ECF No. 50, PageID.448.) And because the printout from the grievance database shows that Berryman and Lee did not pursue a complaint about the January 2018 denial through Step III of the grievance process, the Magistrate Judge recommends granting Defendants' motion for summary judgment.

Berryman, but not Lee, objects. (ECF No. 51.) Berryman makes two main arguments in his objections to the Magistrate Judge's report. He argues that a May 2015 grievance about a single-cell accommodation was resolved in his favor and so he should not have to again grieve the issue. (*See e.g.*, ECF No. 51, PageID.456–457.) He also argues that he simply followed Taylor's direction (or, arguably, even an order) and brought his single-person cell issue to the Warden's Forum. (*See e.g.*, ECF No. 51, PageID.469.) Either way, Berryman says, the exhaustion requirement is met.

## II.

This Court must consider anew those issues raised by Berryman's objections. *See* 28 U.S.C. § 636(b). And Defendants have moved for summary judgment on an issue that they bear the burden of proof on at trial. *See Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) (clarifying that defendants bear both the "burden of production and persuasion on the issue of exhaustion"). That means this Court addresses *de novo* (1) whether any reasonable fact-finder could find that Berryman's May 2015 grievance exhausted the issues he presents in this case and (2) whether any reasonable fact-finder could find that adhering to a grievance coordinator's direction to bring a grievance to the Warden's Forum amounts to exhaustion.

## III.

The Court begins with Lee and Berryman's reliance on the Warden's Forum; it then addresses Berryman's reliance on the May 2015 grievance.

4

**A.**

Berryman maintains that he and Lee brought their issues about being denied a single-person cell to the Warden's Forum and so they exhausted any remedy that the prison system might have provided. To be more specific, Berryman points to sections F and G of the MDOC grievance policy directive that governed back in January 2018 (the policy was amended in March 2019 and former F and G are now J.7 and J.8). Section F said, "Two or more prisoners . . . may not jointly file a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest." (ECF No. 30, PageID.174.) And Section G said that a grievance would be rejected if it "raise[d] issues that are duplicative of those raised in another grievance filed by the grievant." (ECF No. 30, PageID.175.) According to Berryman, he and Lee have identical issues: they are both wheelchair bound, they both need to catheter, they both need to self-evacuate feces, and they both want a single-person cell. (*See e.g.*, ECF No. 47, PageID.399.) So, says Berryman, "according to [MRF] Grievance Coordinator E. Taylor [he and Lee] could not file a grievance and as she said take it to the Warden's Forum." (ECF No. 34, PageID.298; *see also* ECF No. 34, PageID.299 (providing that grievance coordinator stated "that they should take it to the Warden's Forum").) Berryman thus argues that not only did he follow the grievance policy directive, he followed Taylor's "instructions." (ECF No. 51, PageID.465.) "[I]n fact," says Berryman, Taylor's "instructions became mandatory." (ECF No. 51, PageID.466.)

It may be well be the case that a prisoner satisfies (or is excused from) the exhaustion requirement if the grievance coordinator at his facility instructs him on how to have his issue addressed by prison officials and the prisoner follows the coordinator's instructions. *Cf. Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) ("A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution."). But even if that non-

5

traditional path to exhausting exists, the facts of this case show that Berryman and Lee went astray of that path.

Berryman and Lee first went off track by not providing MRF staff with the particulars of their situation. Here is the question they posed in the Warden's Forum:

> Warden, the Forum would like to know why MRF [Macomb Correctional Facility] staff are not complying with MDOC policy Medical Service Advisory Committee Guideline 003? Effective 1/18/00 this policy states: 'Patients who are wheelchair-bound will be automatically placed in a barrier-free wheelchair accessible cell. This special accommodation will replace the need for health care to order single cell.' Also are MRF staff required to honor grievances they signed agreeing for a prisoner to be placed in a single person room/cell?

(ECF No. 34, PageID.305.) The first question was general. Berryman and Lee quoted the language of a generally-applicable medical guideline, i.e., one that applied to all wheelchair-bound prisoners, and then asked why MRF staff were not complying with that general guideline. (To the extent the second question was specific to Berryman, it is a reference to his May 2015 grievance which the Court addresses below.)

The allegations in this lawsuit are much more detailed than the Warden's Forum question. True, in this case, Berryman and Lee still misinterpret Medical Service Advisory Committee Guideline 003 to mean that all wheelchair-bound prisoners are to receive a single-person cell. But they also say they need a single-person because of the combination of their need for a wheelchair, their age, their use of catheters, their need to self-evacuate their feces, the humiliation they feel from having to self-evacuate in front of cellmates, and attacks from cellmates. Their complaint in this case also implies that MRF staff have not provided them with a single-person cell in part because of an earlier lawsuit against "the Warden and Inspector Steece and Jennkins and the Health care staff." (ECF No. 1, PageID.10.) None of these assertions appear in the Warden's Forum question.

Yet one of the justifications—if not the key justification—for requiring exhaustion is to give prison officials a fair opportunity to address a prisoner's issues before federal courts get involved. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."); *Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) ("We have . . . explained that the purpose of the PLRA's exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court."); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("[T]he grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit."). Because the Warden Forum's question did not give MRF staff some of Berryman and Lee's primary bases for a single-person cell, no reasonable fact finder could find that the Warden Forum's question exhausted administrative remedies or excused the need to.

In fairness to Berryman and Lee, prior to the Warden's Forum question, Berryman had discussed the particulars of his situation with MRF staff. Not only did he do so verbally, he had also written letters to the Deputy Warden George Stephenson about his need for single-person cell. For example, in February 2018, Berryman wrote to Stephenson:

> After our conversation last week concerning my Single Person Room/Cell status, you said that you would let me know your decision by Monday seeing that the prisoner in the room was leaving and he was becoming argumentative concerning the Feces Smell and the fact that I have to use Catheters several times a day I can understand that. But had it gone on long there is no doubt that there would have been an altercation.
>
> I understand the paper that you have is the Judge lifting the restraining order, but the case went on appeal to the Sixth Circuit and is on its way back for trial, also regardless of the restraining order, I'm attaching Four attachments which are to help you understand my position, as I'm relying upon MDOC policies, Addendum,

7

> Medical Document to sent to the Federal Court by the AGA and Your Signature upon a legal Contract (Grievance) agreeing to my Single Person Room/Cell status.

(ECF No. 1, PageID.33.) Notably, it was Stephenson who answered the Warden's Forum question. So it might be fair to say that at least Stephenson (if not other MRF staff) knew all of Berryman's and Lee's asserted grounds for a single-person cell and thus, MRF staff had a fair chance to address their grievances on the merits.

Still, there is little reason to think that in answering the Warden's Forum inquiry, Stephenson found that Berryman' and Lee's particular circumstances (their need to self-evacuate, their age, etc.) did not warrant a single-person cell. Indeed, on February 26, 2018—which was before the Warden's Forum response—Stephenson had responded to Berryman's letters and denied Berryman a single-person cell. (ECF No. 1, PageID.36 ("Your request for single person cell has been denied.").) Given that Stephenson had already denied Berryman's specific request for a single-person cell before answering the Warden's Forum question, Stephenson had good reason to think the Warden's Forum question was of a general nature. Indeed, he answered it in just that way: "Prisoner(s) who need a single person cell are designated by [Correctional Facilities Administration] and MRF adheres to the accommodation, therefore if a prisoner is designated by CFA to have a single person cell he will be accommodated. If a prisoner no longer has a single person cell medical accommodation then he is no longer assigned a single person cell." (ECF No. 51, PageID.476.)

Moreover, under the MDOC's grievance procedure, giving prison officials a fair opportunity to address a prisoner's issues includes a multi-step appeal process. But the Warden's Forum involves only one level of inquiry.

So, in short, even if the MRF grievance coordinator told Berryman and Lee to pursue their issues in the Warden's Forum, a reasonable fact-finder could not conclude that the Warden's

Forum question gave prison officials a fair opportunity to address the issues Berryman and Lee have raised in this lawsuit.

And the Warden's Forum question did not satisfy the exhaustion requirement for a second, independent reason. As explained, the exhaustion requirement gives prison officials a chance to correct their own mistakes. And at least in some cases, prison officials do just that. So it only makes sense that to properly exhaust, a prisoner should wait for a response from prison officials before filing a lawsuit. *See Annabel v. Heyns*, No. 16-2398, 2018 WL 4870866, at *5 (6th Cir. Apr. 10, 2018); *Anderson v. Borgerding*, No. 17-12854, 2018 WL 3581137, at *4 (E.D. Mich. July 2, 2018), *report and recommendation adopted*, 2018 WL 3575934 (E.D. Mich. July 25, 2018); *Gardner v. Michigan Dep't of Corr.*, No. 2:16-CV-3, 2018 WL 1156151, at *1 (W.D. Mich. Mar. 5, 2018). Otherwise, a prisoner might file suit only to soon learn that prison officials have agreed to the relief sought in his grievance.

Here, however, the record indicates that Berryman and Lee did not wait for a response to their Warden's Forum question before filing suit. Their affidavits in support of their complaint were signed on February 15, 2018. (ECF No. 1, PageID.27–28.) And their complaint was signed on February 22, 2018. (ECF No. 1, PageID.25.) And, based on the envelope stamp, it appears that the postal service had received Berryman and Lee's complaint on March 5 or March 6, 2018. (ECF No. 1, PageID.38.) Indeed, by March 9, 2018, the Clerk of Court had received the complaint and had docketed it. (ECF No. 1.) Yet the response to the Warden's Forum question is also dated March 9, 2018. (ECF No. 51, PageID.476.) So it appears that Berryman and Lee had prepared and signed their complaint, had handed it to prison officials for mailing, and that prison officials had actually mailed their complaint all before Berryman and Lee even knew whether they would receive a favorable response to their Warden's Forum question. In other words, even if the Warden Forum's

9

path could lead to exhaustion, Berryman and Lee took a short cut to federal court rather than completing that path. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("[W]e must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed.").

**B.**

In the alternative, Berryman (but not Lee) attempts to show exhaustion via a May 2015 grievance. (*See e.g.*, ECF No. 51, PageID.456; ECF No. 34, PageID.297, 302.) In May 2015, Berryman grieved not having a single-person cell. But at Step I, Berryman was given a single-person cell (apparently by Stephenson). (*See* ECF No. 1, PageID.9; ECF No. 34, PageID.302–303; ECF No. 51, PageID.475.) So the grievance was resolved in Berryman's favor. Berryman thus believes that he did not need to file another grievance about not having a single-person cell.

The Court rejected this very argument in a prior case. *See Berryman v. Haas*, No. 17-CV-10762, 2017 WL 3263980, at *1–2 (E.D. Mich. July 31, 2017). And the Sixth Circuit Court of Appeals has affirmed that determination. In particular, the Court of Appeals stated, "Berryman's 2015 grievance involved events that took place at that time, while the events that Berryman complained about in this suit were different, and not only because they happened in 2017. To file a federal action about those events, then, Berryman had to exhaust his available administrative remedies, which he could have done by filing a grievance and litigating it through the prison's grievance process." *Berryman v. Haas*, No. 18-1426, slip op. at 3–4 (6th Cir. Feb. 13, 2019).

This reasoning applies squarely to Berryman's reliance on the May 2015 grievance in this case. For at least the second-half of 2017, Berryman had a single-person cell. Then, in January 2018, MRF staff placed Berryman in a cell with a cell-mate. So "Berryman's 2015 grievance

involved events that took place at that time, while the events that Berryman complained about in this suit were different." So Berryman needed to grieve the January 2018 events.

Given Berryman's history, the Court does not expect this to be the last lawsuit he files. He need only heed the Sixth Circuit direction to "fil[e] a grievance and litigat[e] it through the prison's grievance process" to make it much easier for the courts to address the merits of his claims.

## C.

The Court notes that in his objections, Berryman does not argue that this Court's ruling on Lee's request for preliminary relief is inconsistent with the Magistrate Judge's determination that neither Berryman or Lee exhausted administrative remedies. And to the extent any such argument might be made, the Court notes that the preliminary-injunction ruling was just that, preliminary. *See Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 782 (7th Cir. 2011) ("[F]indings made at the preliminary injunction stage do not bind the district court as the case progresses."). Moreover, the Magistrate Judge addressed the Warden's Forum route to exhaustion on the merits and Berryman has had opportunity to object.

## IV.

For the foregoing reasons, the Court ACCEPTS the Magistrate Judge's recommendation (ECF No. 50.) It follows that this Court GRANTS Defendants' motion for summary judgment (ECF No. 30). As Berryman and Lee did not exhaust prison remedies for the issues raised in their original complaint, subsequent exhaustion cannot stave off dismissal. *Cf. Mattox v. Edelman*, 851 F.3d 583, 592 (6th Cir. 2017) (holding that a plaintiff can "amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim"). Accordingly the Court DISMISSES this case WITHOUT PREJUDICE and DENIES all pending motions as moot.

While the Court has dismissed this case, the Court trusts MRF staff will consider all of Berryman's and Lee's circumstances—their wheelchair-bound status, their age, their medical conditions, the humiliation they allegedly feel from having to self-evacuate in front of other prisoners, their claims of upset or assault by cellmates, and the repeat and protracted litigation regarding a single-person cell—in deciding Berryman's and Lee's cell placement.

The Michigan Attorney General is ordered to provide a copy of this opinion to the wardens at Berryman's and Lee's correctional facilities.

SO ORDERED.

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE

Date: March 31, 2019